**CIRCLE R, INC., a Nebraska Corporation, Plaintiff,**

v.

**SMITHCO MFG., INC., an Iowa corporation, and Greg Smith, an individual, Defendants.**

No. C 96–4002.

United States District Court,
N.D. Iowa,
Western Division.

March 20, 1996.

**1277**

G. Brian Pingel of Sherer, Templer, Pingel & Kaplan, P.C., West Des Moines, Iowa, and Richard H. Moeller of Berenstein, Moore, Moser, Berenstein & Heffernan, Sioux City, Iowa, for Defendants Smithco Mfg., Inc., and Greg Smith.

Dennis L. Thomte of Zarley, McKee, Thomte, Voorhees & Sease, Omaha, Nebraska, for Plaintiff Circle R, Inc.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ................................. 1278
 A. Procedural Background ......................................... 1278
 B. Factual Background ........................................... 1280
II. LEGAL ANALYSIS ................................................ 1286
 A. Standards For Preliminary Injunctions In Patent Cases .................. 1287
 1. Factors in the analysis ......................................... 1287
 2. Relationship of the factors ...................................... 1288
 3. Provisional determinations ...................................... 1289
 B. Individual Factors And Their Application ............................ 1289
 1. Likelihood of success on the merits ................................ 1289
 a. Validity .................................................. 1289
 i. The "on-sale" bar ....................................... 1290
 ii. "Obviousness." ........................................ 1294
 iii. Inventorship ......................................... 1294
 iv. Inequitable conduct ................................... 1295
 b. Infringement ............................................. 1295
 i. Literal infringement ..................................... 1297
 ii. "Doctrine of equivalents." ............................... 1297
 2. Irreparable harm ............................................. 1300
 a. Availability of a presumption .................................. 1300
 b. When the presumption is not available .......................... 1301
 3. Balance of harms ............................................. 1303
 4. Public interest ............................................... 1304
III. CONCLUSION ................................................... 1304

BENNETT, District Judge.

A motion for a preliminary injunction in a patent infringement case often involves the court in a precarious balance of presumptions, inferences, and equitable concerns based on only a thinly developed record and preliminary findings of fact and conclusions of law, all in the interest of forestalling irreparable harm and maintaining the status quo. Although the court's preliminary determination is subject to ultimate revision following trial on the merits, if the question of whether or not to issue a preliminary injunction is wrongly decided at this nascent stage of the proceedings, the court's preliminary determination may inflict as much irreparable harm as it forestalls. In this case, the court must consider how far presumptions will carry the plaintiff patentee in its demand for a preliminary injunction to enjoin production of allegedly infringing side-dump semi-trailers. Specifically, the plaintiff has invoked the presumptions of patent validity and of irreparable harm if a preliminary injunction is not issued to enjoin sales of the allegedly infringing side-dump trailers made by defendants. Defendants have countered these presumptions with evidence they contend shows neither presumption can properly stand, because the patent is neither valid nor infringed. The court here enters the ruling on plaintiff's application for a preliminary injunction the court concludes will best serve to prevent irreparable harm and to maintain the status quo.

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

Plaintiff Circle R, Inc., filed this patent infringement action on January 5, 1996, against defendants "The Smith Co." and "Gregg Smith," asserting that defendants are infringing Circle R's patent for a side-dump trailer.[1] Defendants answered the complaint and asserted a counterclaim on January 29, 1996. In their answer, defendants asserted, *inter alia,* that the corporate defendant had been incorrectly titled by Circle R, and that the company's name is properly Smithco Mfg., Inc. Following a hearing on plaintiff's motion for a preliminary injunction, the court entered an order granting the parties' oral request to amend the caption in the case to identify the defendants properly as "Smithco Mfg., Inc.," and "Greg Smith." The defendants will therefore be referred to herein collectively as "Smithco," except when individual acts or statements of Mr. Smith are under discussion.

Leaving nomenclature aside, and returning to more significant matters, Circle R's complaint alleges that Circle R is the owner of United States Patent No. 5,480,214 (hereinafter, "the '214 patent"), entitled "SIDE DUMP TRAILER," and that Smithco is infringing one or more claims of that patent by manufacturing, marketing, and selling truck and/or trailer bodies covered by the '214 patent. Jurisdiction over the complaint is asserted under 28 U.S.C. § 1338 (patent jurisdiction). The complaint asserts that the '214 patent is valid and enforceable, that Smithco is literally infringing the patent-in-suit, that infringement by Smithco is "willful," and that Circle R is entitled to a permanent injunction against such infringement, whether direct, contributory, or by inducement. The complaint seeks damages adequate to compensate Circle R for infringement of its patent that are in no event less than a reasonable royalty, plus interest and costs, enhancement of damages up to three times the amount assessed as the result of the asserted "willfulness" of the infringement, payment of costs and attorneys fees,

and such other relief as the court deems just and equitable.

On January 18, 1996, Circle R also moved for a preliminary injunction "enjoining Defendants and their servants and agents from manufacturing, using or selling side dump trailer bodies which infringe one or more claims of U.S. Patent No. 5,480,214." Circle R attached to its application for a preliminary injunction various "evidentiary materials," including photographs of an allegedly infringing trailer made by Smithco and a copy of the '214 patent. Circle R also attached an affidavit of its patent expert, registered patent attorney John A. Beehner, stating his opinion that the Smithco side-dump trailer infringes each limitation of claims one and two of the '214 patent, and an affidavit of Ralph Rogers, the President of Circle R and the named inventor of the '214 patent, in which Mr. Rogers describes a purported business partnership with Greg Smith of Smithco, breach of that partnership arrangement, and subsequent infringement of Circle R's patent by Smithco.

In the brief in support of its motion for a preliminary injunction, Circle R argues that Smithco's trailers literally infringe each and every limitation of at least claims 1 and 2 of the '214 patent, and that Smithco has no right whatsoever to make, use, or sell such trailers. Circle R also argues that the hardship to it of not issuing a preliminary injunction is the impingement of its limited-in-time property right to exclusivity under the patent, while any hardship to Smithco of such an injunction, which is a result of Smithco's election to build a business on an infringing product, should be disregarded. As to likelihood of success on the merits, Circle R relies on both its expert's opinion that Smithco is infringing the patent and the presumption of validity of United States patents. A further presumption figures in Circle R's assertion of irreparable harm, in that it contends that "irreparable harm is presumed when a clear showing has been made of patent validity and infringement." Plaintiff's Memorandum In Support Of Its Motion For A Preliminary

---

**1.** Although originally assigned to Senior Judge Donald E. O'Brien, on January 22, 1996, Judge O'Brien entered an order transferring this case to my docket.

Injunction, p. 9 (citing *H.H. Robertson Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 390 (Fed.Cir.1987), *overruled on other grounds, Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977 (Fed.Cir.1995)). Circle R also contends that the public interest favors enforcement of patent rights, and therefore all pertinent considerations favor the grant of a preliminary injunction in this case.

On January 29, 1996, Smithco answered Circle R's complaint, asserting both affirmative defenses and a counterclaim to the effect that the '214 patent is invalid and unenforceable. Specifically, in its affirmative defenses, Smithco contends that the '214 patent has been "anticipated" under 35 U.S.C. § 102, that it is "obvious" under 35 U.S.C. § 103, and that the inventorship of the '214 patent has been misrepresented to the Patent and Trademark Office (PTO) in violation of 35 U.S.C. § 116. Smithco contends that the co-inventor of the patent is Joe Garthright, an employee of Smithco, and that Smithco has an implied license to a shop right to make, use, or sell the alleged invention in the patent. In its counterclaim, Smithco reasserts the allegations in its affirmative defenses, arguing that the '214 patent is invalid and unenforceable, and that Ralph Rogers is not the sole inventor of the patent, but that he was instead assisted in developing the alleged invention by Joe Garthright, who is therefore a co-inventor of the patent. As relief on its counterclaim, Smithco seeks a declaration that the '214 patent is invalid and/or not infringed by Smithco, that the patent is unenforceable, and that Joe Garthright is a co-inventor of the patent. Smithco further seeks award of its costs and attorneys fees, as well as such other relief as may appear equitable and just in the circumstances. Circle R replied to the counterclaim on February 2, 1996, denying all allegations upon which the counterclaim depends.

Smithco did not immediately resist Circle R's motion for preliminary injunction, but instead sought an extension of time to do so on February 2, 1996. That motion for an extension of time was granted on February 3, 1996, granting Smithco to and including March 4, 1996, within which to respond to the motion for preliminary injunction.

Smithco's resistance to the motion for preliminary injunction was subsequently timely filed on March 4, 1996. With its resistance, Smithco filed photographs of three side-dump trailers purchased by Greg Smith's trucking company, Smith Trucking Company, from Circle R in 1992 and 1993, purportedly indicating, among other things, the maximum degree of pivot each achieves when dumping, a purchase agreement for one of these trailers, dated October 18, 1993, as well as photographs of two trailers recently produced by Smithco, again showing their degree of dumping pivot. Smithco also provided the affidavits of Greg Smith, Joe Garthright, who is the manager of Smith Trucking, and Smithco's patent expert, registered patent attorney Kent A. Herink.

In its resistance, Smithco argues that a preliminary injunction would not maintain the status quo in this case, but would instead completely disrupt Smithco's business, which is solely the making and selling of side-dump trailers of its own design. Smithco also argues that there is no credible evidence of likelihood of success on the merits, because the '214 patent has never been tested in litigation. Smithco contends that the '214 patent is invalid under the "on-sale" bar found in 35 U.S.C. § 102(b), because the alleged invention of the patent was on sale in this country, indeed, was sold to Greg Smith's trucking company, Smith Trucking, by Circle R, more than one year prior to the date of the application for the '214 patent. Furthermore, Smithco contends, the '214 patent is obvious under prior art disclosed in prior patents. Smithco contends that the patent is invalid, as well as unenforceable, for a third reason, which is that the patent application violated 35 U.S.C. § 116 by failing to disclose that Joe Garthright was a co-inventor of the alleged invention and failing to name Mr. Garthright as a co-inventor. Smithco also contends that the patent is unenforceable owing to inequitable conduct during the patent application and prosecution process, because Circle R and Rogers never advised the PTO of the sale of the three prior art trailers to Smithco.

Smithco also attacks Circle R's allegations of infringement as well as Circle R's asser-

tions of validity and enforceability. Smithco contends that its side-dump trailers do not literally infringe Circle R's patent, if valid, because the Smithco trailers employ a pivot of more than ninety degrees from their non-dumping positions, while the patent specifically states that it employs a pivot of not more than ninety degrees. Smithco contends further that Circle R is estopped from asserting infringement based on the "doctrine of equivalents," because it distinguished prior art during the prosecution of the patent on the basis that the prior art employed a pivot in excess of ninety degrees. Thus, because there is no valid patent and no infringement if the patent is valid, Smithco contends there can be no adequate showing of likelihood of success on the merits and no presumption of irreparable harm. Furthermore, Smithco contends that the balance of harms favors its continued operation, and the public interest does not favor an injunction in circumstances involving no valid patent and no infringement.

Circle R's motion for preliminary injunction was heard on March 13, 1996. At the hearing, plaintiff Circle R was represented by counsel Dennis L. Thomte of Zarley, McKee, Thomte, Voorhees & Sease, in Omaha, Nebraska. Defendants Smithco and Greg Smith were represented by counsel G. Brian Pingel of Sherer, Templer, Pingel & Kaplan, P.C., in West Des Moines, Iowa, and Richard H. Moeller of Berenstein, Moore, Moser, Berenstein & Heffernan, in Sioux City, Iowa.

Prior to the hearing, on March 12, 1996, Circle R mailed a motion to opposing counsel and the court, which was filed March 15, 1996, to strike evidentiary materials filed by defendants in support of their resistance to the motion for a preliminary injunction. In that motion, Circle R contends that there is no adequate foundation laid for introduction of the photographs of the first three trailers sold by Circle R to Smith Trucking, because there is no affidavit from any person present during the photographing. Circle R contends that the photographs are also irrelevant, because they do not show that the trailers in question were positioned on level ground and do not show the degree of pivot

of the trailers relative to the frame. Circle R also argues that the photographs are irrelevant, because they do not explain purportedly obvious modifications to the dumping configuration of the trailers as the result of repairs or replacements of parts, which, Circle R contends, would change the degree of dumping pivot of the trailers.

Also prior to the hearing, on March 12, 1996, Circle R mailed a reply brief to opposing counsel and the court, which was filed March 15, 1996. In that reply brief, Circle R argued, as it had for the first time during the hearing, that the sales of trailers by Circle R to Smith Trucking more than one year prior to the patent application were "experimental" sales, that neither trigger the "on-sale" bar of 35 U.S.C. § 102(b), nor any duty of disclosure to the PTO. At the hearing and by subsequent written order, the court granted Smithco's oral request for leave to respond to the new "experimental sales" arguments. The court received a courtesy copy of Smithco's further response brief by facsimile on March 15, 1996, and a copy was subsequently filed with the clerk of court by mail on March 18, 1996.

The court now turns to the factual background provided by the parties' written submissions and the evidence presented at the March 13, 1996, hearing.

### B. Factual Background

The parties tell quite different stories about the circumstances under which each company that is a party here began making side-dump trailers, the relationship among Circle R, Greg Smith, and Smithco, and the circumstances that led to the invention of the '214 patent. Circle R is a Nebraska corporation with its principal place of business in South Sioux City, Nebraska. Its president is Ralph Rogers. In his declaration in support of the motion for preliminary injunction, Rogers stated that prior to March of 1994, Circle R designed, developed, and, on a limited basis, manufactured side-dump trailers, one or more of which were purchased by Greg Smith. Rogers stated that owing to Greg Smith's interest in the side-dump trailers he had purchased from Circle R, Smith approached Rogers in March of 1994 about forming a partnership

to make and sell trailers on Rogers' new design. Rogers contended that he and Smith formed a partnership on March 26, 1994, to design, manufacture, and sell side-dump trailers, in which Rogers contributed his designs, and Smith provided capital. Rogers did not produce any partnership agreement as an exhibit in the litigation of this motion for preliminary injunction, either by attachment to Circle R's complaint or the motion for a preliminary injunction, or as an exhibit at the hearing before this court. In his declaration, Rogers contended that Smith breached the partnership agreement, and instead has been producing trailers that infringe one of Rogers' patents at Smith's trailer manufacturing company in LeMars, Iowa.

In his responsive declaration, Smith contended that no such partnership was ever formed and that the issue of whether any such partnership exists or ever existed has been foreclosed by judicial proceedings in Nebraska state court in Dakota County, Nebraska, in which judgment was entered in Smith's favor. However, Smith has not identified the proceedings further nor produced a copy of the judgment from those proceedings. At the evidentiary hearing on the motion for preliminary injunction, Rogers did not reassert his argument that he and Smith had been partners in a business to manufacture side-dump trailers. Whether he had or not, the court need make no finding concerning this dispute, not even a preliminary one, because it is collateral to the question presently before the court, which is whether a preliminary injunction should issue to enjoin patent infringement. The court points out these different views concerning the relationship between Rogers and Smith as background to the question of who invented the device patented as the '214 patent.

Of more immediate pertinence is the content of the '214 patent, itself. Rogers applied for a patent for a "SIDE DUMP TRAILER" on October 20, 1994. A patent was issued on January 2, 1996, as United States Patent No. 5,480,214. The invention identified in the patent consists of a trailer bed, or tub, that can dump to either side by means of hydraulic arms mounted on either end of a frame and connected to the ends of the tub, causing the tub to pivot one way or the other, depending on which pair of corner pivots has been released from its pivot points, and which pair remains locked in place, thus serving as pivots when the tub dumps to the side. Principally at issue in this litigation are claims 1 and 2 of the '214 patent. Claim 1 of the patent [2] describes the

---

2. Claim 1 of the '214 patent reads as follows:

1. A side dump trailer, comprising:

an elongated wheeled frame having a forward end, a rearward end, and opposite sides;

a first support on said wheeled frame adjacent the forward end thereof at one side thereof;

a second support on said wheeled frame adjacent the rearward end thereof at the one side thereof;

a third support on said wheeled frame adjacent the forward end thereof at the other side thereof;

a fourth support on said wheeled frame adjacent the rearward end thereof at the other side thereof;

an elongated body movably positioned on said wheeled frame and having a forward end, a rearward end, opposite sides, and an open upper end for receiving materials to be transported;

said body including a substantially flat, horizontally disposed bottom wall having a forward end, a rearward end, and first and second opposite side edges;

said body also including an upstanding forward wall member, an upstanding rearward wall, and first and second side walls which extend upwardly and outwardly from the first and second side edges of said bottom wall;

a first, horizontally disposed pivot pin secured to said first side wall of said body adjacent the forward end thereof adapted to be removably and pivotally received by said first support;

a second, horizontally disposed pivot pin secured to said first side wall of said body adjacent the rearward end thereof adapted to be removably and pivotally received by said second support;

a third, horizontally disposed pivot pin secured to said second side wall of said body adjacent the forward end thereof adapted to be removably and pivotally received by said third support;

a fourth, horizontally disposed pivot pin secured to said second side wall of said body adjacent the rearward end thereof adapted to be removably and pivotally received by said fourth support;

said first, second, third and fourth pivot pins being elongated and having their axes disposed parallel to the length of said body and said wheeled frame;

principal inventions of the patent. The final limitation of claim 1 is perhaps the most critical to the question of any infringement of the '214 patent in this case. It provides as follows:

> the angular relationship of said side walls with respect to said bottom wall, together with the relationship of said pivot pins with respect to said side walls and said bottom wall, enabling the material in said body to be dumped therefrom, *when positioned in its dumping positions, without the necessity of pivotally moving said body greater than 90° from its non-dumping position.*

U.S. Patent No. 5,480,214, claim 1, final paragraph (emphasis added). Claim 2 of the patent,[3] which is derivative from claim 1, and therefore a "dependent" claim, pertains to the locking devices for each pivot point. Rogers was listed as the sole inventor on the patent application, and is listed as the sole inventor on the patent as issued. Rogers stated in his declaration that he assigned all rights in the '214 patent to his company, Circle R. Circle R contends that trailers now being made by Smithco literally infringe each and every limitation of at least claims 1 and 2 of the '214 patent.

Greg Smith has a different version of the circumstances under which the invention of the '214 patent was conceived. Smith stated, in both his declaration and in testimony before the court, that during April or May of 1992, he became dissatisfied with side-dump trailers then available from another supplier, Bailey Engineering and Manufacturing Company (BEMCO), used by his trucking company, Smith Trucking, in hauling and dumping rock, sand, gravel, dirt, and other materials. The manager of Smith Trucking, Joe Garthright, became involved in trying to improve the design of such trailers. The problems Mr. Garthright identified with the BEMCO trailers, which BEMCO declined to address, included breaks in electrical and hydraulic lines, hydraulic cylinders which were sometimes opened up during the dumping process, cracking of support structure for hinges of the tub body, and difficulties with unhooking the trailers from the associated tractor.

Garthright and Smith therefore approached Circle R to see if it would be interested in producing trailers that met their requirements. According to both Garthright and Smith, Garthright specifically explained to Rogers that the trailers should be built with a light, stiff frame that would

> said first, second, third and fourth pivot pins being positioned on the respective side walls above said bottom wall and outwardly of said side walls;
>
> first, second, third and fourth locking devices selectively movable between locked and unlocked positions for selectively maintaining said first, second, third, and fourth pivot pins in said first, second, third and fourth supports respectively when in their locked positions;
>
> a first power cylinder having a base and pivotally secured to said wheeled frame intermediate the sides thereof forwardly of said body and a rod end pivotally secured to said forward wall member of said body intermediate the sides thereof;
>
> a second power cylinder having a base end pivotally secured to said wheeled frame intermediate the sides thereof rearwardly of said body and a rod end pivotally secured to said rearward wall of said body intermediate the sides thereof;
>
> and means for simultaneously selectively extending the rods of said first and second power cylinders whereby said body will dump the material therein from said one side of said body when said first and second locking devices are in their locked positions

> and said third and fourth locking devices are in their unlocked positions and whereby said body will dump the material therein from said other side of said body when said third and fourth locking devices are in their locked positions and said first and second locking devices are in their said unlocked positions;
>
> the angular relationship of said side walls with respect to said bottom wall, together with the relationship of said pivot pins with respect to said side walls and said bottom wall, enabling the material in said body to be dumped therefrom, when positioned in its dumping positions, without the necessity of pivotally moving said body greater than 90° from its non-dumping position.

3. Claim 2 of the '214 patent reads as follows:

> 2. The side dump trailer of claim 1 wherein each of said locking devices includes a side which is selectively movable into engagement with its associated pivot pin to prevent the upward movement of the pivot pin relative to the associated support while permitting pivotal movement of the pivot pin with respect to the support, each of said slides including means for locking said slide in its locked position.

provide room to anchor the hoses, the hydraulic cylinders for the tub body should be larger, and the trailer should have a king pin with a fifth wheel on the tractor for hitching the tractor and trailer together.

Rogers specifically contradicted this testimony in his own testimony at the preliminary injunction hearing. Rogers testified that Garthright brought him only "problems," but suggested no "solutions." Rogers testified that at some point Smith suggested they might be able to use an old trailer frame from an end-dump trailer for a new side-dump trailer, but that he could not recall whose idea it was to use a frame as part of the design. Testimony from witnesses for both sides, however, indicated that frames under side-dump trailers were not an entirely new innovation, as a side-dump trailer Garthright had seen in North Dakota in 1991 or 1992 employed such a frame. From uncontradicted testimony at the hearing, however, it was shown that the BEMCO side-dump trailer does not use such an underlying frame, but instead is based on log carriers that use no frame. Although he contradicted Garthright's assertions of co-inventorship of the side-dump trailer patent at issue here, Rogers conceded at the hearing that he would not have started making side-dump trailers but for the suggestion that he build such trailers for Smith Trucking. However, at this stage of the proceedings, the court is unwilling to find that Garthright's design suggestions, if made, were necessarily material to the patentable aspects of the invention embodied in the '214 patent.

The disputes about co-inventorship aside, for the moment, it is undisputed that Circle R built a trailer for Smith Trucking during the summer of 1992, which was delivered in August of 1992, that incorporated various new features to address the problems Smith Trucking was having with its BEMCO trailers. Smith presented testimony and photographic evidence that the angle of pivot of this truck is eighty-nine or ninety degrees from its non-dumping position. Although counsel for Circle R may have succeeded in undermining the weight of the photographic evidence concerning this and the other two trucks Smith Trucking purchased from Circle R in 1992 and 1993,[4] Smith's testimony that an angle of pivot of not more than ninety degrees for this first truck, as purportedly shown in the challenged photographs, was "consistent with his experience" during the years in which Smith Trucking used the trailer is sufficient to raise a substantial question as to whether the trailer indeed pivoted not more than ninety degrees while in the fully dumped position. Mr. Smith's testimony was based on his recollection that this particular trailer did not dump "cleanly" when soft, damp, or fine aggregates, such as dirt or sand, were dumped, and further measures, such as "bouncing" the tub, had to be taken to remove the last of the load in such cases.

Smith Trucking bought two more trailers from Circle R during 1992 and 1993. The second trailer purchased by Smith Trucking was delivered on October 9, 1992, and the third, ordered on October 18, 1993, was delivered on October 26, 1993. Smithco entered into evidence a Nebraska Vehicle Purchase Contract for this third trailer, dated October 18, 1993, showing a purchase by Smith Trucking from Circle R of this third side-dump trailer for $22,987.00, with a down payment of $5,000.00. Defendants' Exhibit D. Smithco asserts that these three trailers purchased by Smith Trucking from Circle R in 1992 and 1993, and all ordered more than

4. Apparently to counter Circle R's assertions that the photographic evidence of these three early trailers was without foundation and irrelevant, Smithco presented at the hearing the testimony of Charles Bastian, the photographer who took the photographs at American Contracting Company in Dickinson, North Dakota, where the trailers are currently in use after having been sold to American Contracting by Smith Trucking. During an extensive voir dire examination of this witness by Circle R's counsel, Mr. Bastian testified that the trucks were on ground that was "fairly level" during the photographing, and that, as far as he could tell, the tubs of the trailers were pivoted to full dumping position for photographs in the dumping position. The court concludes that adequate foundation for the photographs was laid by Mr. Bastian's testimony, that the photographs are relevant, as they are probative of the questions at issue in this application for a preliminary injunction, and that they are therefore admissible, although the weight to be given such photographs may nonetheless be very slight. Circle R's motion to strike evidentiary materials will therefore be denied.

one year prior to the filing of the application for what became the '214 patent, resemble the '214 patented invention in almost all respects.

Smithco's expert witness, Kent Herink, opined that every limitation of the first claim of the patent "reads on" the first two, but not the third, of these trailers purchased by Smith Trucking from Circle R in 1992 and 1993. Mr. Herink testified that the third trailer failed to meet the final limitation of claim 1, which is the limitation that the dumping pivot not exceed ninety degrees from the tub's non-dumping position. The degree of dumping pivot of the second truck as shown from testimony and photographic evidence is eighty-five degrees from its non-dumping position. Again, Smith testified that this dumping angle was also consistent with his experience, because, while the first trailer appeared to be almost straight up and down when in the fully dumping position, the second trailer appeared to be slightly short of the vertical. Smith testified that the third trailer purchased from Circle R, however, visibly exceeded a ninety-degree pivot when fully dumping. No photographic evidence of the dumping angle of this third trailer was presented at the hearing.

Although Smith testified that all three of these trailers purchased from Circle R during 1992 and 1993 had been subjected to various repairs, made either by Circle R or by Smith Trucking or a repair shop selected by Smith Trucking, Smith asserted that none of these repairs would have changed the dumping pivot of the trailers. Specifically, Smith testified that there had been no changes to the components constituting the dumping configuration of the second trailer, and any changes to the hydraulic cylinders that actually dump the trailer tub on the first trailer had been made to replace exactly the prior configuration. Therefore, on the first trailer, the "ram" of a replacement cylinder had to be cut-off, as Rogers had originally done, to shorten the "stroke" of the cylinder, and maintain the prior maximum dumping pivot. Smith also testified that no repairs to the third trailer had changed its dumping configuration and maximum dumping pivot.

It is undisputed that Rogers' application for what later became the '214 patent did not include any disclosure of the sale of these three trailers to Smith Trucking made more than one year before the date of the patent application, that is, more than one year prior to October 20, 1994. For the first time at the hearing, Circle R suggested that the sale of these first three trailers had been "experimental." Rogers testified that he did not know if these trailers would "work," although he had a "good idea" that they would, and that he had no idea whether they reflected a "marketable" design or would stand up in service. Rogers conceded that there was no written or oral agreement that Smith Trucking would "test" the trailers and report back on their performance, and that there was no restriction on the resale of the trailers or any requirement that they be kept "secret" from the public. His assertion that the trailers were "experimental" was that he decided when he built them that if they worked, he would build and sell them. Rogers also asserted that the sale prices of the trailers, $19,000, $20,000, and $23,000, when the trailers now sell for $34,000, was a price break or monetary incentive to Smith Trucking to try the design for him, but he conceded that there is no sale document reflecting such a "price reduction" or such a reason for any price reduction.

Against this assertion of "experimental" sales, Smith and Garthright testified that there were no restrictions on resale, no conditions of any kind on the sales, and no price reduction for trying an experimental design. They further testified that Rogers neither required nor requested that they provide him with any feedback on the performance of the trailers. Rather, they testified that they had great difficulty in interesting Rogers or any other Circle R representatives in problems they encountered from time to time with the trailers. Although Circle R made some of the repairs to the trailers from time to time, Smithco and other repair shops also made repairs, often, Smith testified, because Circle R was not interested in fixing problems with the trailers. Smith testified that Smith Trucking insisted that the third trailer purchased from Circle R use stock parts for the cylinders, rather than the cut-off rams used

by Circle R on the cylinders for the first two trailers, so that repair and replacement could be done more cheaply and easily.

With the testimony of Joe Garthright, the former manager of Smith Trucking, the court must return to the question of the "co-inventorship" of the '214 patent. Garthright testified that Rogers' son, Kevin, suggested that Circle R should pay Garthright $500.00 for every side-dump trailer Circle R sold for bringing Circle R his ideas for the side-dump trailer. Garthright testified that on one occasion, Kevin repeated this suggestion in front of Rogers, who agreed. Garthright testified that he has received two such $500.00 payments from Circle R as the result of sales of Circle R side-dump trailers to customers other than Smith Trucking. Thus, Smithco contends, Garthright is a co-inventor of the '214 patent, and that Rogers has acknowledged as much. Rogers testified that the $500.00 payments were "finders fees" for bringing customers for side-dump trailers to Circle R. However, Garthright testified that he had never had any direct contact with the customers of the trailers whose purchases caused Rogers to pay him the $500.00 payments. Garthright testified that if he had any "indirect" contact with these customers, it could only have been that they had seen Smith Trucking trailers made by Circle R, and had asked the drivers where they got them. The court finds the evidence thus far presented concerning the $500.00 payments as demonstrating Garthright's co-inventorship, as well as the evidence thus far presented concerning Garthright's contribution to the invention of the side-dump trailers, is at best equivocal, and at worst insubstantial. The court therefore turns to factual matters concerning Smithco's formation and its manufacture of side-dump trailers.

Smith formed Smithco as an Iowa corporation in 1994, with its principal place of business in LeMars, Iowa. Smithco began doing business on May 18, 1994. Its business was to manufacture Smithco's own line of side-dump trailers, based on Garthright's modifications and other prior art. Smithco now employs twenty employees, almost all of whom are full-time, with a total weekly payroll for non-officer employees of almost $5,000, excluding taxes. Smithco currently produces approximately one side-dump trailer per week, with a sale price of approximately $29,000, and Smith testified that Smithco has more orders than it can currently fill at its present manufacturing capacity. Smithco makes no other product. Smith testified that he did not know if it would be possible for Smithco to retool to make some other kind of side-dump trailer, and stood on his assertion that Smithco is not currently making an infringing trailer.

Two examples of Smithco trailers, according to testimony and photographic evidence, have a left side dumping pivot of ninety-four degrees, and a right side dumping pivot of ninety-five degrees, for one, and a left side dumping pivot of ninety-two degrees, and a right side dumping pivot of ninety-four degrees, for the other. Smith testified that these dumping angles are consistent with his recollection of the dumping angles as measured during the tests shown in the photographs. Smithco also entered into evidence, in the form of photographs and testimony, evidence concerning a third Smithco trailer, now owned by Joe Garthright's trucking company, Triple D. This third Smithco trailer has a left full dumping pivot of ninety-seven to ninety-eight degrees, and a right full dumping pivot of ninety-six to ninety-seven degrees. This was the same trailer shown in Circle R's photographic exhibits, which photographs formed part of the basis for Circle R's expert's opinion concerning infringement. In his declaration, Smith asserted that the manufacturing procedures for Smithco are sufficiently consistent that none of their trailers would have a dumping pivot to either side of less than ninety-two degrees. At the hearing, Smith testified that the "jigs" on which the trailers are built are set for a dumping angle, exclusive of any twist or leaning of the frame during dumping, of ninety-four degrees. Smithco contends that these trailers cannot literally infringe a patent claim stating that it provides for a dumping pivot not greater than ninety degrees from its non-dumping position, and its expert witness, Mr. Herink, concurs.

Circle R's expert, registered patent attorney John A. Beehner, however, opined to the

contrary. He testified that his opinion was that the Smithco trailers, which he had considered via photographic evidence and representations of plaintiff's counsel, and "rigidly" compared to the '214 patent, infringed each and every limitation of claims 1 and 2 of the patent. He stated that he recognized that claim 2 was dependent on claim 1, and therefore could not be infringed if claim 1 was not infringed. He also conceded that none of the photographs he had examined prior to the hearing showed the Smithco trailers in dumping position. Mr. Beehner testified that his opinion as to infringement of the last limitation of claim 1 was based on the representation of Circle R's counsel that the Smithco trailers pivoted not more than ninety degrees when fully dumping, and that he had no firsthand knowledge of the dump angle of any of the Smithco trailers.

All of the dumping pivots described above were measured while the trailers were standing on ground apparently level to the naked eye, according to witnesses present, and the tub of each truck, in the non-dumping position, appeared to be level. Indeed, the photographic evidence of the Smithco trailers provided by Smithco all included angle-finder readings in the non-dumping position indicating that the trucks were standing level. The measurements of pivot were relative to this non-dumping position, and therefore relative to level ground. The parties and witnesses all conceded that in the course of side dumping, the frame of the trailer either leans or twists in the direction of the dump approximately four or five degrees. Thus, some portion of the full-dumping pivot is the result of this twist or leaning of the frame in addition to pivot of the tub relative to the frame.

With this factual and procedural background in mind, the court now turns to the legal standards applicable to Circle R's motion for a preliminary injunction in a patent case.

## II. LEGAL ANALYSIS

### (Including some further preliminary findings of fact)

■ The United States Constitution vests Congress with the power to "promote the Progress of Science and the useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. CONST., art. I, § 8, cl. 8. To that end, Congress passed the patent laws of the United States found in Title 35 of the United States Code. Among the provisions of U.S. patent laws is 35 U.S.C. § 283, which provides for injunctions in patent cases as follows:

> The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.

35 U.S.C. § 283; see also High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc., 49 F.3d 1551, 1554 (Fed.Cir.1995) (finding that "Congress has authorized district courts in patent cases to grant injunctions" in accordance with the terms of 35 U.S.C. § 283); Reebok Int'l, Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1555 (Fed.Cir.1994) ("Injunctive relief in patent cases is authorized by 35 U.S.C. § 283 (1988)."). This provision authorizes the district courts to grant both preliminary injunctions, after preliminary proceedings, and permanent injunctions, after a full determination on the merits. High Tech Med., 49 F.3d at 1554. However, the Federal Circuit Court of Appeals has cautioned that "a preliminary injunction is 'not to be routinely granted.'" High Tech Med., 49 F.3d at 1554 (quoting Intel Corp. v. ULSI Sys. Technology, Inc., 995 F.2d 1566, 1568 (Fed.Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 923, 127 L.Ed.2d 216 (1994)); Intel Corp., 995 F.2d at 1568 ("[A] preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted."); New England Braiding Co. v. A.W. Chesterton Co., 970 F.2d 878, 882 (Fed.Cir.1992) (describing issuance of a preliminary injunction as "extraordinary relief"); Nutrition 21 v. United States, 930 F.2d 867, 869 (Fed.Cir. 1991) (same); Illinois Tool Works, Inc. v. Grip-Pak, Inc., 906 F.2d 679, 683 (Fed.Cir. 1990) (same). A preliminary injunction based on patent infringement "involves substantive issues unique to patent law and, therefore, is governed by the law of [the

Federal Circuit Court of Appeals]." *Reebok*, 32 F.3d at 1555.

### A. Standards For Preliminary Injunctions In Patent Cases

#### 1. Factors in the analysis

 The Federal Circuit Court of Appeals has established a number of equitable inquiries to determine when issuance of a preliminary injunction pursuant to 35 U.S.C. § 283 is "reasonable." These include (1) likelihood of success on the merits; (2) irreparable harm to the patentee if a preliminary injunction is denied; (3) a balance of the hardships to the parties as the result of granting or denying an injunction; and (4) the public interest weighing for or against issuance of a preliminary injunction in a particular case. *See, e.g., PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1558 (Fed.Cir.1996); *Sofamor Danek Group, Inc. v. DePuy–Motech, Inc.*, 74 F.3d 1216, 1219 (Fed.Cir.1996) (formulating the four inquiries as whether the movant can show: "(1) a reasonable likelihood of success on the merits, (2) an irreparable harm, (3) the balance of hardships tipping in its favor; and (4) a tolerable effect on the public interest," citing *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed.Cir.1988)); *Reebok*, 32 F.3d at 1555 (also citing *Hybritech*); *Intel Corp.*, 995 F.2d at 1568 (also citing *Hybritech*); *New England Braiding Co.*, 970 F.2d at 882; *Filmtec Corp. v. Allied–Signal, Inc.*, 939 F.2d 1568, 1571 (Fed.Cir.1991); *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 952 (Fed.Cir.1990).[5]

These factors must be balanced against each other and against the extent of the relief sought in the patentee's motion for preliminary injunction. *Sofamor*, 74 F.3d at 1219; *Intel Corp.*, 995 F.2d at 1568 ("Each factor must be weighed and assessed against the others and against the form and magnitude of the relief requested," citing *Hybritech*); *Filmtec Corp.*, 939 F.2d at 1571; *Chrysler Motors Corp.*, 908 F.2d at 953; *Hybritech*, 849 F.2d at 1451. The movant bears the burden of proving that it is entitled to preliminary injunctive relief. *Sofamor*, 74 F.3d at 1219; *Reebok*, 32 F.3d at 1555.

 The decision to grant or deny a preliminary injunction in a patent case is a matter in the trial court's discretion, and review is for abuse of that discretion. *PPG Indus.*, 75 F.3d at 1558; *Sofamor*, 74 F.3d at 1219; *High Tech Med.*, 49 F.3d at 1551 (observing, "After a district court has granted a preliminary injunction, however, this court will reverse only if the district court 'has abused its discretion, committed an error of law, or seriously misjudged the evidence,'" quoting *Hybritech*, 849 F.2d at 1449); *Reebok*, 32 F.3d at 1555; *Filmtec Corp.*, 939 F.2d at 1571 (also reviewing for "abuse of discretion, an error of law, or a serious misjudgment of the evidence," citing *Chrysler Motors Corp.*, 908 F.2d at 953). However, to overturn the *denial* of a preliminary injunction, an appellant must show both that the trial court relied on clearly erroneous factors and that it abused its discretion in otherwise denying the preliminary injunction. *Sofamor*, 74 F.3d at 1219; *Reebok*, 32 F.3d at

5. These equitable inquiries are not unlike the factors considered in this circuit for the issuance of preliminary injunctions or temporary restraining orders in non-patent cases. *Accord High Tech Med.*, 49 F.3d at 1554 (observing that the Federal Circuit Court of Appeals "has made clear that the standards applied to the grant of preliminary injunctions are the same in patent cases as in other areas of the law," citing *H.H. Robertson*, 820 F.2d at 387). The Eighth Circuit standards for issuing either a temporary restraining order or a preliminary injunction are set out in the seminal decision of *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 & n. 5 (8th Cir. 1981) (en banc). One recent formulation of the *Dataphase* standards is as follows:

When considering a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between the harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc). We reverse the issuance of a preliminary injunction only if the issuance "is the product of an abuse of discretion or misplaced reliance on an erroneous legal premise." *City of Timber Lake v. Cheyenne River Sioux Tribe*, 10 F.3d 554, 556 (8th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2741, 129 L.Ed.2d 861 (1994).

*Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 929 (8th Cir.1994).

1555 ("When a preliminary injunction is denied, to obtain reversal the movant must show not only that one or more of the findings relied on by the district court was clearly erroneous, but also that denial of the injunction amounts to an abuse of the court's discretion upon reversal of erroneous findings."); *New England Braiding Co., Inc.,* 970 F.2d at 882 (to obtain reversal of the grant of a preliminary injunction, the alleged infringer must convince the appellate court "that one of the factual premises is clearly erroneous," but to obtain reversal of the denial of a preliminary injunction, the patentee "carries a heavier burden" to "show not only that one or more of the factors relied on by the district court was clearly erroneous, but also that a denial of the preliminary relief sought would amount to an abuse of the court's discretion upon reversal of an erroneous finding.").

### 2. Relationship of the factors

■ A preliminary injunction may be denied in the absence of an adequate showing with regard to any one of the four factors, depending on the weight given each factor in the court's discretionary examination as justifying denial. *Reebok,* 32 F.3d at 1556; *Intel Corp.,* 995 F.2d at 1570 ("Although none of the factors alone is dispositive, the absence of a sufficient showing with regard to any one factor may, in light of the weight assigned to the other factors, preclude preliminary injunctive relief."); *Chrysler Motors Corp.,* 908 F.2d at 953. Although the Federal Circuit Court of Appeals generally looks at all four factors in its preliminary injunction inquiry, "[c]entral to the movant's burden are the likelihood of success and irreparable harm factors." *Sofamor,* 74 F.3d at 1219; *Reebok,* 32 F.3d at 1555-56 ("[I]t is always preferable that a district court make findings regarding each of the four factors which weigh in the balance concerning whether to deny a preliminary injunction," but "[b]ecause, irrespective of relative or public harms, a movant must establish both a likelihood of success on the merits *and* irreparable harm . . ., the district court may deny a

preliminary injunction based on the movant's failure to establish either of these two crucial factors without making additional findings respecting the other factors."); *Nutrition 21,* 930 F.2d at 869 ("Sufficient factual findings on the material issues are necessary to allow this court to have a basis for meaningful review."). Indeed, where the plaintiff patentee showed neither a likelihood of success on the merits nor irreparable harm, the Federal Circuit Court of Appeals held that the district court properly denied a motion for preliminary injunction, and itself looked no further than these two factors in its review of the denial of a preliminary injunction. *Sofamor,* 74 F.3d at 1223; *High Tech Med.,* 49 F.3d at 1554-55 (finding that the preliminary injunction granted by the district court could not be sustained on the grounds of likelihood of success on the merits or irreparable harm, the appellate court concluded that "it is unnecessary to address the arguments directed to the other factors bearing on the issuance of preliminary injunctive relief."); *Reebok,* 32 F.3d at 1556 ("[A] movant cannot be granted a preliminary injunction without findings by the district court that the movant carried its burden on *both* [likelihood of success and irreparable harm]," with emphasis in the original, and noting that "[a]rguably, our cases suggest that a district court must always consider all four factors," but finding all factors must only be considered before *granting* a preliminary injunction, while denial of a motion for a preliminary injunction could be proper without consideration of the third and fourth factors); *New England Braiding,* 970 F.2d at 882 (affirming denial of a preliminary injunction even though the district court made no findings concerning irreparable harm, the balance of hardships, or public interest, because the district court committed no clear error in finding that the movant was not likely to succeed on the merits at trial). This court will examine each of the four factors in turn, beginning, however, with these two "central" factors of likelihood of success on the merits and irreparable harm.[6]

---

**6.** Although incompleteness of relevant findings "does not necessarily require that [the appellate court] vacate the district court's order and re-

mand for further fact finding," *Reebok,* 32 F.3d at 1555, plainly, it would be better for this court to make adequate findings of fact on each factor

### 3. Provisional determinations

However, before considering any of these factors, and the necessary findings of fact each entails, it is well to remember that in the context of preliminary injunction applications, in patent infringement as well as other kinds of cases, the court typically operates under "severe time constraints" and must customarily decide the motion " 'on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.' " *New England Braiding Co.,* 970 F.2d at 883 (quoting *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981)). As the Federal Circuit Court of Appeals observed, "such a record does not usually allow for a reliable resolution of the merits." *Id.* Thus, the Supreme Court in *Camenisch,* the case cited by the Federal Circuit Court of Appeals in *New England Braiding,* stated the general rule that "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981); *accord Henderson v. Bodine Aluminum, Inc.,* 70 F.3d 958, 962 (8th Cir.1995) (non-patent case citing this statement from *Camenisch* as the "general rule" for findings of fact and conclusions of law in preliminary injunction rulings); *United States v. Barnes,* 912 F.Supp. 1187, 1190 (N.D.Iowa 1996) (applying the "general rule" of *Camenisch* to a preliminary injunction ruling on the government's request for a preliminary injunction pursuant to 18 U.S.C. § 1345 to enjoin activities of defendants who were allegedly engaged in mail fraud in violation of 18 U.S.C. § 1341). Any findings of fact in this ruling, either made above or in the course of the legal analysis, as well as any conclusions of law forming part of the court's determination of whether the issuance of a preliminary injunction is proper in this case, are intended to be subject to this "general rule" and are not to be considered "final."

to establish not only the propriety of its disposition of the motion for a preliminary injunction,

### B. Individual Factors And Their Application

### 1. Likelihood of success on the merits

■ Likelihood of success on the merits depends upon sufficient showing of both validity of the patent-in-suit and its infringement by the defendant sought to be enjoined. *Sofamor,* 74 F.3d at 1219 (finding these dual requirements in 35 U.S.C. § 283 and citing *Hybritech,* 849 F.2d at 1451); *Reebok,* 32 F.3d at 1555 (also citing *Hybritech* ). Therefore, this court will consider Circle R's likelihood of success over Smithco's assertions of invalidity of the '214 patent, as well as its likelihood of success on its claim of infringement of the patent.

#### a. Validity

■ The presumption of validity upon which Circle R specifically relies in this case is found in 35 U.S.C. § 282. *See New England Braiding Co.,* 970 F.2d at 882 ("Section 282, United States Code, Title 35 (1988), provides that a patent shall be presumed valid.") Section 282 provides, in pertinent part, as follows:

> A patent shall be presumed valid.... The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting it.

35 U.S.C. § 282. However, this presumption of validity can be "weighed" in determining the likelihood of success on the merits in the context of a motion for a preliminary injunction. *New England Braiding Co.,* 970 F.2d at 882. The presumption acts as a procedural device, "plac[ing] the burden of going forward with evidence and the ultimate burden of persuasion of invalidity at trial on the alleged infringer." *Id.* However, unless the alleged infringer challenges validity of the patent-in-suit, the patentee "need do nothing to establish its rights under the patent." *Id.* In this case, however, Smithco has directly challenged the presumption of validity of the '214 patent and asserts that it has presented sufficient evidence to overcome the presumption.

but to facilitate appellate review, if any is required.

**1290**

■ As to the question of validity in the context of disposition of a motion for a preliminary injunction, the Federal Circuit Court of Appeals has stated,

> The ultimate question ... is whether the challenger's evidence of invalidity is sufficiently persuasive that it is likely to overcome the presumption of patent validity. *See New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 883, 23 U.S.P.Q.2d 1622, 1625 (Fed.Cir.1992).

*PPG Indus.*, 75 F.3d at 1566. Thus, the alleged infringer must present sufficient evidence in support of its invalidity claim to raise a "substantial question" of invalidity, "although the defense may not be entirely fleshed out." *New England Braiding Co.*, 970 F.2d at 883. Where the defendant cannot make sufficient showing of invalidity, the presumption of validity is sufficient to satisfy the patentee's burden of showing of likelihood of success on the merits as to validity. *PPG Indus.*, 75 F.3d at 1566. However, although the patentee has no burden to prove validity of its patent, when validity has been challenged, "the patentee must show that the alleged infringer's defense lacks substantial merit." *New England Braiding Co.*, 970 F.2d at 883.

■ *i. The "on-sale" bar.* Smithco's first challenge to the validity of the '214 patent is that the alleged invention described in the patent was on sale more than one year before Rogers applied for the patent. Thus, Smithco asserts that the patent is invalid pursuant to 35 U.S.C. § 102(b):

> An inventor loses the right to a patent if he placed the claimed invention "in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). Whether an invention is on sale is a question of law.

*In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 71 F.3d 1573, 1576 (Fed.Cir.1995); *Ferag AG v. Quipp, Inc.*, 45 F.3d 1562, 1566 (Fed.Cir.) (citing the statutory bar and stating that the ultimate determination that a product was placed on sale is a question of law based on underlying facts), *cert. denied*, ___ U.S. ___, 116 S.Ct. 71, 133 L.Ed.2d 31 (1995); *In re Epstein*, 32 F.3d 1559, 1564 (Fed.Cir.1994) (citing statutory bar and also stating determination is one of law based on underlying facts). The alleged infringer bears the burden of demonstrating that " 'there was a definite sale or offer to sell more than one year before the application for the subject patent, and that the subject matter of the sale or offer to sale fully anticipated the claimed invention.' " *Id.* (quoting *UMC Elecs. Co. v. United States*, 816 F.2d 647, 656 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988)); *Ferag AG*, 45 F.3d at 1566. The test is an objective one, measuring whether the inventor placed the invention on sale, which is "objectively manifested by a sale or offer for sale of a product that embodies the invention claimed in the patent." *Ferag AG*, 45 F.3d at 1568.

■ Whether a device has been placed on sale is not subject to a "mechanical rule," but instead depends on the totality of the circumstances, considered in view of the policies behind § 102(b). *In re Mahurkar*, 71 F.3d at 1577; *Ferag AG*, 45 F.3d at 1565 (determination of whether an invention was "on sale" depends on the totality of the circumstances; no single one controls); *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 860 (Fed.Cir.1985) (underlying policy drives the inquiry), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986). The Federal Circuit Court of Appeals has identified those policy considerations as including the following:

> (1) discouraging removal of inventions from the public domain that the public reasonably has come to believe are freely available; (2) encouraging the prompt and widespread disclosure of inventions; (3) allowing an inventor a reasonable amount of time following sales activity to determine the potential economic value of a patent; and (4) prohibiting an inventor from commercially exploiting his invention beyond the statutorily prescribed time.

*In re Mahurkar*, 71 F.3d at 1577; *Ferag AG*, 45 F.3d at 1566; *Envirotech Corp. v. Westech Eng'g, Inc.*, 904 F.2d 1571, 1574 (Fed.Cir.1990). The Federal Circuit Court of Appeals has therefore stressed that the central focus of the on-sale inquiry is whether there was a

"commercialization" of the invention. *In re Mahurkar,* 71 F.3d at 1577; *Ferag AG,* 45 F.3d at 1566 ("[T]he inventor is strictly held to the requirement that he file his patent application within one year of any attempt to commercialize the invention.").

However, "a patentee may escape the section 102(b) bar on the ground the use or sale was experimental." *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n,* 958 F.2d 1066, 1071 (Fed.Cir.1992); *see also Ferag AG,* 45 F.3d at 1568–69 (sale of device meeting buyer's specifications meets "on-sale" test, while "experimental" sales do not); *Atlantic Thermoplastics Co., Inc. v. Faytex Corp.,* 5 F.3d 1477, 1480 n. 3 (Fed.Cir.1993) ("If the invention was sold or offered for sale before the critical date, other than primarily for a *bona fide* experimental purpose to perfect the invention, 35 U.S.C. § 102(b) bars [the patentee] from obtaining a patent therefor."); *U.S. Environmental Prods., Inc. v. Westall,* 911 F.2d 713, 716 (Fed.Cir.1990) ("A section 102(b) bar is avoided if the primary purpose of the sale was experimental."). The Federal Circuit Court of Appeals has several times considered the difference between "experimental" sales to "perfect" an invention and truly commercial sales. Thus, in *LaBounty,* the court reiterated,

> "[A] use or sale is experimental for purposes of section 102(b) if it represents a bona fide effort to perfect the invention or to ascertain whether it will answer its intended purpose.... If any commercial exploitation does occur, it must be merely incidental to the primary purpose of experimentation to perfect the invention." *Pennwalt Corp. v. Akzona, Inc.,* 740 F.2d 1573, 1580–81, 222 USPQ 833, 838 (Fed. Cir.1984) (citations omitted).

*LaBounty,* 958 F.2d at 1071. To test whether there has been "commercialization" of the invention, as opposed to merely "experimental" sales, the court examines such matters as whether the invention was advertised or offered to anyone other than a party involved in the development of the invention, whether the sale is of "prototypes" that do not place the invention in the public domain or lead the public to believe that the device is freely available, and whether the sales allowed the patentee to test the potential market value of the patent. *In re Mahurkar,* 71 F.3d at 1577; *Westall,* 911 F.2d at 717 (one factor is "existence of promotional activities"). Furthermore, the Federal Circuit Court of Appeals has considered whether there is an agreement by the customer to use the device secretly and keep records of progress, and continued control by the inventor of the patented equipment while in the hands of the purchaser. *LaBounty,* 958 F.2d at 1071 (secrecy agreement and record-keeping, as well as continued control); *Westall,* 911 F.2d at 716 (factors include "lack of record-keeping," "lack of control by the inventor," "lack of secrecy obligations on the part of the user."); *Armco, Inc. v. Cyclops Corp.,* 791 F.2d 147, 149 (Fed.Cir.1986) (district court improperly granted summary judgment of an "on-sale" bar, because district court disregarded evidence that the inventor and the buyer had a confidentiality agreement concerning use of the invention and evidence of other documents exchanged between the parties referring to the experimental nature of the invention and describing the purpose of the shipments to the buyer as testing whether the alloy in question would work for its intended purpose).[7] Looking more closely at the inventor's con-

---

7. Circle R contends that *In re Mann,* 861 F.2d 1581 (Fed.Cir.1988), stands for the proposition that "[t]he law ... recognizes that such testing and development may encompass or even require disclosure to the public, without barring the inventor's access to the patent system." However, *In re Mann* involved an alleged "on-sale" bar to an ornamental design patent for a table, which the court found barred by the inventor's display of the design at a trade show more than one year prior to the patent application. *In re Mann,* 861 F.2d at 1581–82. The court concluded, "We see no way in which an ornamental design *for* an article of manufacture can be sub-ject to the "experimental use" exception applicable in the case of functioning machines, manufactures, or processes. Obtaining the reactions of people to a design—whether or not they like it—is not 'experimentation' in that sense." *Id.* at 1582. Thus, because *In re Mann* involves a finding of no experimental use, and was a case involving an ornamental design, which it distinguished from the kind of "functioning machine" design involved in this case, *In re Mann* is not helpful to Circle R's position. Furthermore, the case does not suggest that testing and development may encompass or even require disclosure to the public, as Circle R would have it.

tinued control over the invention, the sale or offer of sale purportedly violating the on-sale bar must involve separate entities; thus, the question is, "whether the seller so controls the purchaser that the invention remains out of the public's hands." *Ferag AG*, 45 F.3d at 1567. When entities are "related," it is "difficult to determine whether the inventor is attempting to commercialize his invention." *Id.*

Finally, because Rogers has asserted it was his intent that the sales to Smith Trucking were to be "experimental," the court must consider what part the patentee's intent plays in a determination of experimental use. In *LaBounty*, the Federal Circuit Court of Appeals discussed the impact of the inventor's intent in light of contrary objective evidence:

> An inventor's protestation of an intent to experiment, expressed for the first time during litigation, is of little evidentiary value, at best. *In re Brigance*, 792 F.2d 1103, 1108, 229 USPQ 988, 991 (Fed.Cir.1986); *TP Labs. [v. Professional Positioners, Inc.]*, 724 F.2d [965,] 972, 220 USPQ [577,] 583 [ (Fed.Cir.), *cert. denied*, 469 U.S. 826, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984) ]. Indeed, "an inventor's subjective intent is immaterial when objective evidence points otherwise." *Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478, 1481 n. 3, 2 USPQ2d 1364, 1366 n. 3 (Fed.Cir.1986). When sales are made in an ordinary commercial environment and the goods are placed outside the inventor's control, an inventor's secretly held subjective intent to "experiment," even if true, is unavailing without objective evidence to support the contention. *Brigance*, 792 F.2d at 1108, 229 USPQ at 991. Under such circumstances, the customer at a minimum must be made aware of the experimentation. As stated in *In re Dybel*, 524 F.2d 1393, 1401, 187 USPQ 593, 599 (CCPA 1975), "[Inventor's] failure to communicate to any of the purchasers or prospective purchasers of his device that the sale or offering was for experimental use is fatal to his case."

*LaBounty*, 958 F.2d at 1071–72; *Westall*, 911 F.2d at 717 ("The subjective belief of the inventors or customers [as to experimental use], however, must be weighed against objective evidence which indicates otherwise," also citing *Brigance*, 792 F.2d at 1108 & n. 8).

■ The court concludes that Smithco has established at least a "substantial question" as to the validity of the '214 patent under the "on-sale" bar of § 102(b), although its assertion of sales prior to the critical date may need to be further "fleshed out" in order to prevail on a trial of the merits. *New England Braiding Co.*, 970 F.2d at 883. Thus, the court finds Smithco's evidence of sales of the invention more than one year prior to the patent application in this case to be sufficiently persuasive to overcome the presumption of validity for preliminary injunction purposes. *PPG Indus.*, 75 F.3d at 1566. Smithco has identified three sales, all occurring during 1992 and 1993, and all occurring more than a year before the critical date of October 20, 1994, when Rogers filed his patent application. To all appearances from the preliminary injunction record, the first two of those sales involved side-dump trailers employing or embodying every limitation of the subsequent patent, at least as to the two claims of the patent upon which the motion for preliminary injunction was founded. *In re Mahurkar*, 71 F.3d at 1576; *Ferag AG*, 45 F.3d at 1568. The trailers purchased by Smith Trucking in 1992 and 1993 employ the same side-dumping mechanism identified in the first claim of the patent, including the frame and hydraulic system, means for pivoting the trailers, and those first two trailers had a maximum degree of pivot while dumping that did not exceed ninety degrees, as required by the last limitation of claim 1 of the '214 patent.

■ Circle R argued that even if there is a "substantial question" that claim 1 is invalid owing to an "on-sale" bar, the three trailers, including the two the court finds meet the limitations of claim 1, had different pivot locking devices from that described in claim 2 of the patent, at least before repairs to the first trailer. Circle R argued that the validity of even dependent claims, such as claim 2, must be separately assessed even if the independent claim, upon which *infringement* of a dependent claim depends, is shown to be

invalid. The court finds that, in general, the validity of each claim of a patent, even a dependent claim, is indeed a separate consideration from the validity of any other claim, even the validity of the independent claim upon which the dependent claim depends. *See* 35 U.S.C. § 282 ("Each claim of a patent (whether independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim."); 35 U.S.C. § 253 ("Whenever, without any deceptive intention, a claim of a patent is invalid the remaining claims shall not thereby be rendered invalid."); *Ortho Pharmaceutical Corp. v. Smith,* 959 F.2d 936, 942 (Fed.Cir.1992) (citing §§ 282 and 253, and stating, "We have held that this means 'a party challenging the validity of a claim, absent a pretrial agreement or stipulation, must submit evidence supporting a conclusion of invalidity of each claim the challenger seeks to destroy,'" quoting *Shelcore, Inc. v. Durham Indus.,* 745 F.2d 621, 625 (Fed.Cir.1984), and holding invalidity of one claim did not necessarily require the invalidation of others); *but see Miles Labs., Inc. v. Shandon, Inc.,* 997 F.2d 870, 879 (Fed.Cir.1993) (where parties had stipulated that claim 1 of a patent was representative for the other claims in the patent, and the trial court properly understood that the result reached as to that claim would bind all other claims, the district court's invalidation of dependent claims upon finding claim 1 invalid was proper), *cert. denied,* ─── U.S. ───, 114 S.Ct. 943, 127 L.Ed.2d 232 (1994). However, Smithco's expert stated his opinion that the language of claim 2 is broad enough to include the pivot locking devices originally employed on the first two trailers as well as those presently used on Circle R trailers, and presently in use on the first trailer. The court finds that Smithco's expert's interpretation is sufficient at this point in the proceedings to raise a "substantial question" as to whether claim 2 is also invalid under the "on-sale" bar.

■ The court must therefore turn to Circle R's contention that these sales still escape the "on-sale" bar, because they were only "experimental." On the preliminary injunction record, these sales involved "commercialization" of the invention, not merely experimental sales, because they were not for the purpose of perfecting or completing the invention, *Atlantic Thermoplastics,* 5 F.3d at 1480 n. 3, but instead were final sales of fully operational side-dump trailers to a commercial operation and the trailers sold were intended for commercial use without further alteration, testing, or reporting on performance. Although Circle R has presented some evidence, in the form of testimony by Mr. Rogers, that he viewed the sales as experimental, the more substantial objective evidence, *LaBounty,* 958 F.2d at 1071– 72; *Westall,* 911 F.2d at 717, is that there were no restrictions on the sale or public use of the trailers, and no requirement of or request for feedback for the purposes of perfecting or completing the invention, and no communication to Smith Trucking that the trailers were in any respect "experimental" or that the sales were for "experimental" purposes. *In re Mahurkar,* 71 F.3d at 1577; *LaBounty,* 958 F.2d at 1071; *Westall,* 911 F.2d at 716.

■ The fact that the trailers sold more than one year prior to the patent application were built to Smith Trucking's specifications does not make them merely "experimental" either. *Ferag AG,* 45 F.3d at 1568–69 (sale of device meeting buyer's specifications meets "on-sale" test, while "experimental" sales do not). Thus, each of these sales was a "definite" sale, fully anticipating the subsequent patented invention, *In re Mahurkar,* 71 F.3d at 1576; *Ferag AG,* 45 F.3d at 1566, and each was a "commercialization" of the invention, involving a sale into the public domain, or indicating availability of the product to the general public, because each involved no restrictions on the use or resale of the trailers. *Id.; Ferag AG,* 45 F.3d at 1568–69. Nor can there be any doubt that Circle R did not "so control the purchaser," that is, Smith Trucking, "that the invention remain[ed] out of the public's hands." *Ferag AG,* 45 F.3d at 1567.

Thus, although it was not Circle R's burden to prove validity, Circle R has failed to "show that the alleged infringer's [on-sale]

defense lacks substantial merit." *New England Braiding Co.*, 970 F.2d at 883. Therefore, the court holds that Smithco has raised a "substantial question," *id.*, based on "evidence of invalidity [that] is sufficiently persuasive that it is likely to overcome the presumption of patent validity." *PPG Indus.*, 75 F.3d at 1566. That evidence indicates that the disputed claims, claims 1 and 2, of the '214 patent are invalid under the "on-sale" bar of 35 U.S.C. § 102(b). Therefore, the likelihood of success as to invalidity tips against granting a preliminary injunction in this case.

■■■■■ *ii. "Obviousness."* Turning to Smithco's assertion that the '214 patent is also invalid because it is "obvious" under 35 U.S.C. § 103, in preliminary injunction proceedings, the defendant must "demonstrate that the claimed invention would have been obvious to one skilled in the art in light of the disclosures" in prior art references. *PPG Indus.*, 75 F.3d at 1566. "Obviousness" is a legal conclusion involving four factual inquiries: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations, if any, of nonobviousness. *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577, 1582 (Fed.Cir.1996).

■■■■ The court finds Smithco's assertion of invalidity based on "obviousness" less persuasive than its assertion of an "on-sale" bar. Smithco has failed to develop adequately, either in its briefs or in the course of the preliminary injunction hearing, any of the four factual inquiries such that the court can assess whether its "obviousness" challenge is "substantial" or "persuasive." *PPG Indus.*, 75 F.3d at 1566; *New England Braiding Co.*, 970 F.2d at 883. Indeed, the court suspects that the necessary factual inquiries would be difficult to make on the thinly developed record available to a court at the time of a preliminary injunction determination. Therefore the court rejects as a ground for denial of a preliminary injunction Smithco's assertion of invalidity owing to obviousness under 35 U.S.C. § 103. Thus, the court concludes that nothing yet presented concerning the alleged obviousness of the '214 patent

undercuts Circle R's likelihood of success on the merits. The court will pass on to other evidence which may or may not raise a substantial question as to the validity of the '214 patent and, consequently, Circle R's likelihood of success on the merits.

■■■ *iii. Inventorship.* Smithco has made a third challenge to validity (and enforceability) here, alleging that Rogers is not the sole inventor of the '214 patent. Although Smithco has framed this argument primarily in terms of 35 U.S.C. § 116, which requires that when an invention is made by two or more persons, the patent must be sought by joint application of those persons, the court notes that Smithco may also be able to assert this invalidity defense pursuant to 35 U.S.C. § 102(f), which provides that a person shall be entitled to a patent unless "he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f). In *New England Braiding Co.*, the Federal Circuit Court of Appeals considered an argument that a patent was invalid as a "derivative invention," which required the party asserting invalidity to demonstrate that "the named inventor in the patent acquired knowledge of the claimed invention from another, or at least so much of the claimed invention as would have made it obvious to one of ordinary skill in the art." *New England Braiding Co.*, 970 F.2d at 883.

In this case, Smithco has presented only insufficient evidence of Joe Garthright's suggestion to Rogers of particular aspects of the claimed invention found in the '214 patent, thus failing to create a "substantial question," *PPG Indus.*, 75 F.3d at 1566; *New England Braiding Co.*, 970 F.2d at 883, as to whether Rogers acquired knowledge of those parts of the invention that would have made the '214 patent obvious to a person of ordinary skill in the art. *New England Braiding Co.*, 970 F.2d at 883. As the court observed above, in its recitation of the factual background of this case, the evidence concerning $500.00 payments to Garthright and the evidence concerning his suggestion of patentable ideas is at best equivocal and at worst insubstantial. Therefore, the evidence in support of "inventorship" challenges is insufficient to overcome a presumption of validity,

and does not weigh against Circle R's likelihood of success on the merits.

**iv. Inequitable conduct.** Smithco makes further challenges to the '214 patent that come under the rubric of "inequitable conduct." Inequitable conduct consists of an " 'affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information coupled with an intent to deceive.' " *B.F. Goodrich Co.*, 72 F.3d at 1584 (quoting *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed.Cir.1995)); *Molins*, 48 F.3d at 1178. Smithco asserts that the '214 patent is unenforceable, because Rogers failed to disclose that Garthright was a co-inventor of the asserted invention, thus "affirmative[ly] misrepresent[ing] a material fact," and furthermore that Rogers failed to disclose the three trailers sold to Smith Trucking in 1992 and 1993 as "prior art" to the '214 patent, thus "fail[ing] to disclose material information" pertinent to the "on-sale" bar of § 102(b), as well as to the questions of anticipation and obviousness of the patent under §§ 102 and 103. Smithco contends that the latter failure to disclose specifically violated 37 C.F.R. 1.56, which imposes a "duty of candor and good faith" on applicants for a patent as well as a "duty to disclose to the [PTO] all information known to the individual to be material to patentability." 37 C.F.R. 1.56.

Again, the court does not agrees that the evidence of Garthright's contribution to the '214 patent as yet raises a substantial question of inequitable conduct. Although the evidence of the 1992 and 1993 sales of side-dump trailers to Smith Trucking as sales of the patented invention raises a substantial question of validity, because of the "on-sale" bar of § 102(b), the court declines here to consider inequitable conduct based on a provisional record. *See, e.g., Modine Mfg. Co. v. United States Int'l Trade Comm'n*, 75 F.3d 1545, 1557 (Fed.Cir.1996) ("Both materiality

and intent are essential factual predicates to inequitable conduct, and each must be proved by clear and convincing evidence," citing *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed.Cir.1988) (en banc), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989)).[8] Furthermore, any inequitable conduct goes to unenforceability, rather than invalidity, *see, e.g., Pro–Mold and Tool Co., Inc. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1575 (Fed.Cir. 1996) ("The established remedy for inequitable conduct is unenforceability of the patent."), and it is likelihood of success in light of both validity and infringement, not enforceability, that concerns the court when considering a preliminary injunction in a patent case. *Sofamor*, 74 F.3d at 1219 (finding these dual requirements in 35 U.S.C. § 283 and citing *Hybritech*, 849 F.2d at 1451); *Reebok*, 32 F.3d at 1555 (also citing *Hybritech* ).

The court, having found that there is a substantial question as to Circle R's likelihood of success on the merits as to validity, owing to a possible "on-sale" bar to the patent, will also consider the other prong of the likelihood of success inquiry, which examines Circle R's infringement claim.

### b. Infringement

When the court considers likelihood of success on the merits in terms of an infringement claim, the court may construe any disputed claim language as a matter of law. *Sofamor*, 74 F.3d at 1220 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed.Cir.), *cert. granted*, —— U.S. ——, 116 S.Ct. 40, 132 L.Ed.2d 921 (1995)). However, the trial court does not have to interpret the claims of the patent-in-suit "conclusively and finally" during a preliminary injunction proceeding, even though under *Markman*, the court must construe the claims as a matter of law; instead the trial court "may exercise its discretion to interpret the claims at a time when the parties have presented a full picture of the claimed

---

8. The court observes, however, that Smithco has raised a substantial question as to whether or not Rogers should have disclosed these early sales to the PTO over Rogers' assertions that he did not have to disclose sales he believed were merely "experimental." In *LaBounty*, the court was confronted with a similar situation, and held that the inventor's perception that he could reasonably conclude that certain sales were experimental "makes it all the more necessary that the devices should have been disclosed to the examiner. Close cases should be resolved by disclosure, not unilaterally by the applicant." *LaBounty*, 958 F.2d at 1076.

invention and prior art," for example, in the course of proceedings subsequent to those pertaining to the preliminary injunction. *Sofamor*, 74 F.3d at 1221 (citing cases so holding).

Once the trial court has construed the claims of the patent, to the extent and with the finality it considers necessary for preliminary injunction purposes, the court must then determine whether the accused device is likely to fall within the scope of the claims so construed. *Sofamor*, 74 F.3d at 1220; *H.H. Robertson Co.*, 820 F.2d at 389. To infringe a patent, an accused device must embody each claim limitation or its equivalent. *Sofamor*, 74 F.3d at 1220; *Charles Greiner & Co. v. Mari–Med Mfg., Inc.*, 962 F.2d 1031, 1034 (Fed.Cir.1992). Thus, the movant fails to show a reasonable likelihood of success on an infringement claim where it fails to prove that the accused device exactly embodies each claim limitation or its equivalent. *Sofamor*, 74 F.3d at 1221 (movant failed to show exact embodiment, and therefore failed to show likelihood of success on infringement claim); *Charles Greiner*, 962 F.2d at 1034. Nor does a device infringe a patent simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim. *High Tech Med.*, 49 F.3d at 1555 (citing *Hap Corp. v. Heyman Mfg. Co.*, 311 F.2d 839, 843 (1st Cir.1962), *cert. denied*, 373 U.S. 903, 83 S.Ct. 1290, 10 L.Ed.2d 198 (1963)).

In the present case, the court concludes, provisionally, for the purposes of disposing of the motion for preliminary injunction, *Sofamor*, 74 F.3d at 1221, that the final limitation of claim 1 of the '214 patent requires that the accused device employ a dumping pivot that is not greater than ninety degrees from the non-dumping position. Furthermore, the court concludes, if only provisionally, that the dumping pivot in question is relative to the "non-dumping," that is, starting position, of the *tub*, not relative to the *frame*. Although counsel for plaintiff attempted to argue that the critical measurement must be relative to the frame in both the non-dumping and fully-dumping position, and thus, an alleged infringer could not benefit from any twist or lean of the frame during the dumping process, that argument was rejected by Smithco's expert, and is rejected by the court. Smithco's expert pointed out that the patent refers only to pivot relative to the non-dumping position, which he interpreted to mean relative to level ground, not relative to the frame. Thus, according to Smithco's expert, when fully dumping, the final angle of the frame is irrelevant; only the final angle of the tub bottom relative to its starting position matters. The court's provisional construction is slightly different still: the court's view is that the dumping pivot has nothing whatever to do with a reference to the "frame" or to "level" or "level ground." The last limitation of claim 1 makes no reference either to the "frame" or to "level" or "level ground." Instead, the only reference is "when positioned in its dumping positions, without the necessity of *pivotally moving said body* greater than 90° *from its non-dumping position.*" Plaintiff's Exhibit 1, the '214 patent, claim 1, final limitation. The limitation refers to the non-dumping, i.e., starting position of the tub, pivotal motion of the tub, and a final, dumping position of the tub, and the angle in question is between the starting and final positions. Thus, any degree of pivot resulting from the twist or lean of the frame is to be included in the degree of pivot of the tub, because it contributes to the final position of the tub.

To illustrate, using a scenario suggested by Circle R's counsel from time to time, if the side-dumper were situated on ground that inclined fifteen degrees to the left, when commencing to dump to the left, that is, uphill, the "non-dumping position" of the tub would be negative fifteen degrees according to an angle finder calibrated with zero as level. If moved pivotally not greater than ninety degrees to the left, the final, or dumping, position of the tub would be not greater than positive seventy-five degrees, i.e., seventy-five degrees relative to "level ground," but the tub would have pivoted a full ninety degrees, the maximum pivot stated in the claim limitation. If the final position of the tub in this situation was instead positive eighty degrees, that is, eighty degrees relative to "level ground," the tub would have pivoted to the left ninety-five degrees, al-

though it would not be straight up and down, and the trailer would avoid the express language of the limitation.[9]

To summarize, the court construes the final limitation of claim 1 to describe a pivot to a final, fully-dumping position that is not greater than ninety degrees from the starting, non-dumping position of the tub. The angle in question is between these starting an final positions of the tub, and not relative either to "level," "level ground," or the frame of the trailer. Thus, any degree of pivot resulting from the twist or lean of the frame is to be included in the degree of pivot of the tub, because it contributes to the final position of the tub. With this critical claim limitation of the '214 patent so construed, the court must next consider the question of whether Circle R has made an adequate showing of likelihood of success on its claim of infringement of the '214 patent to justify issuance of a preliminary injunction in this case.

**i. Literal infringement.** Literal infringement requires the patentee to show the accused device exactly embodies each claim limitation. *Sofamor*, 74 F.3d at 1221 (movant failed to show exact embodiment, and therefore failed to show likelihood of success on infringement claim, in support of motion for preliminary injunction); *Lantech, Inc. v. Keip Machine Co.*, 32 F.3d 542, 547 (Fed.Cir.1994) (for literal infringement, each limitation of the claim must be met by the accused device *exactly*, and any deviation from the claim precludes a finding of literal infringement); *North Am. Vaccine v. American Cyanamid Co.*, 7 F.3d 1571, 1574 (Fed. Cir.1993) (same), *cert. denied,* — U.S. —, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994); *Charles Greiner*, 962 F.2d at 1034 (same). The accused devices, the Smithco trailers, however, do not exactly embody the last claim limitation of claim 1 as the court has construed the limitation. *Sofamor*, 74 F.3d at 1220; *Charles Greiner*, 962 F.2d at 1034. Rather, the evidence of record in these preliminary proceedings is that the accused

Smithco trailers involve dumping pivots of between ninety-two and ninety-eight degrees. The court affords no weight to the opinion of Circle R's expert to the effect that the Smithco trailers infringe the final limitation of claim 1, because it is apparent from the testimony of Mr. Beehner that he did not examine any Smithco trailer in operation, had no photographs of a Smithco trailer actually in the fully dumping position, and simply relied on counsel's representations that the Smithco trailers pivoted not more than ninety degrees, a representation not borne out by any evidence of record.

Although it is possible that the Smithco trailers could be altered to employ a slightly smaller degree of dumping pivot, thus satisfying this limitation of claim 1, that is not the question in the infringement analysis. *High Tech Med.*, 49 F.3d at 1555. Because the accused devices do not embody this limitation of claim 1, on the provisional record here, they cannot embody each limitation of claim 2, which is derivative of claim 1. Thus, Circle R has failed to show a reasonable likelihood of success on its literal infringement claim, because it has failed to prove that the accused device exactly embodies each claim limitation. *Sofamor*, 74 F.3d at 1221.

Circle R alleged only "literal" infringement of its patent in its complaint and in its motion for a preliminary injunction. Smithco, in defending the motion for preliminary injunction, injected the issue of "doctrine of equivalents" infringement. Thus, giving Circle R the benefit of the doubt, the court must also consider whether Circle R could show a reasonable likelihood of success on the merits of a "doctrine-of-equivalents" infringement claim.

**ii. "Doctrine of equivalents."** The court observes that Circle R also has but slight likelihood of success on a "doctrine of equivalents" infringement claim. An accused product that does not literally infringe a claim may nonetheless infringe the patent under the "doctrine of equivalents" if " 'it performs substantially the same function in

---

**9.** Whether none, some, or all of the material in the tub of the side-dumper would actually dump out in such a scenario is beside the point. The patent also does not state that material will actu-

ally be dumped out, but instead only discusses the relative start and finish positions of the dumper tub.

substantially the same way to obtain the same results.'" *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed.Cir.) (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950)), *cert. denied,* —— U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995); *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1196 (Fed. Cir.1994) (product may infringe if it contains every limitation, either literally, or by substantial equivalence); *Genentech, Inc. v. Wellcome Found., Ltd.*, 29 F.3d 1555, 1567 (Fed.Cir.1994) (substantial equivalence under *Graver Tank* requires a "showing of substantial identity of function, way, and result," and whether the "way" or "result" prong is met "is highly dependent on how broadly one defines the 'function'" element); *Atlanta Motoring Accessories, Inc. v. Saratoga Technologies, Inc.*, 33 F.3d 1362, 1366 (Fed.Cir. 1994); *Dolly, Inc. v. Spalding & Evenflo Cos., Inc.*, 16 F.3d 394, 397 (Fed.Cir.1994). As the parties pointed out in the preliminary injunction hearing, however, the Federal Circuit Court of Appeals has recently reaffirmed that the function-way-result test is not "the test" of equivalence in "doctrine of equivalence" cases, instead citing *Graver Tank* as also stating the question of equivalence as whether there are only "insubstantial differences between the claimed and accused products or processes." *Hilton Davis Chem. Co. v. Warner–Jenkinson Co.*, 62 F.3d 1512, 1521–22 (Fed.Cir.1995) (in banc), *cert. granted,* —— U.S. ——, 116 S.Ct. 1014, 134 L.Ed.2d 95 (Feb. 26, 1996); *see also Roton Barrier, Inc. v. The Stanley Works*, 79 F.3d 1112, 1126 (Fed.Cir.1996) ("In *Hilton Davis*, this court, in reviewing the doctrine of equiv-

alents, stated that the traditional function, way, result tripartite test is not 'the' test for infringement under the doctrine of equivalents.... Rather, a finding of infringement under the doctrine 'requires proof of insubstantial differences between the claimed and accused products or processes....' Thus, satisfaction of the tripartite test may not end the infringement inquiry," but may instead require the court to consider copying or designing around the patent); [10] *National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1191 (Fed.Cir.1996) ("In *Hilton Davis* the court reaffirmed that proof of equivalency is not a matter of formula, but of evidence appropriate to the case."); *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1556 (Fed.Cir.1996) ("The controlling criterion, as reaffirmed in *Hilton Davis*, 62 F.3d at 1518, 35 USPQ2d at 1645, is whether the accused device is substantially the same as the claimed invention. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607, 70 S.Ct. 854, 855–56, 94 L.Ed. 1097 (1950) (insubstantial changes do not avoid the application of the doctrine of equivalents)."); *Sofamor*, 74 F.3d at 1221–22 (citing *Hilton Davis* for the "insubstantial changes" test, and finding that test was drawn from *Graver Tank*'s rejection of a "formula" for determining equivalence, and noting *Hilton Davis*'s rejection of the function-way-result tests as "the test"); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1218 (Fed.Cir.1995) (*Hilton Davis* reaffirmed *Graver Tank*'s recognition of a requirement of "substantial difference"). It could be asserted that a matter of a few degrees of pivot is only an "insubstantial difference," and therefore is "sub-

**10.** As to "designing around" the patent, in *Roton Barrier*, the Federal Circuit Court of Appeals wrote,

> In discussing the relevance of designing around to the issue of infringement under the doctrine [of equivalents], we stated that "[d]esigning around 'is the stuff of which competition is made and is supposed to benefit the consumer.'" [*Hilton Davis*, 62 F.3d] at 1520, 35 USPQ2d at 1646 (quoting *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236, 224 USPQ 418, 424 (Fed.Cir.1985)). In addition, when a competitor is aware of a patent and

> attempts to design around it, "the fact-finder may infer that the competitor ... has designed substantial changes into the new product to avoid infringement" under the doctrine. *Id.* [62 F.3d] at 1520, 35 USPQ2d at 1646–47. *Roton Barrier*, 79 F.3d 1112, 1126. Although the parties' arguments appeared to touch on the question of whether Smith "designed around" the '214 patent, or at least around the Rogers design, the court finds that it need not here address a "designing around" argument in order to dispose of the motion for a preliminary injunction in this case.

stantially equivalent" to the last limitation of claim 1 of the '214 patent.

█ However, Circle R cannot make such an argument. "Prosecution estoppel" prevents a patentee from recapturing within the scope of the claims of the patent under the doctrine of equivalents any scope of the claims surrendered during prosecution. *Sofamor*, 74 F.3d at 1222 (citing *Exhibit Supply Co. v. Ace Patents Corp.*, 315 U.S. 126, 136, 62 S.Ct. 513, 518, 86 L.Ed. 736 (1942)); *Southwall Technologies*, 54 F.3d at 1576 (claims may not be construed one way in order to obtain a patent and in a different way against an accused infringer); *Markman*, 52 F.3d at 979–80 ("For claim construction purposes, the description [in the specification] may act as a sort of dictionary, which explains the invention and may define terms used in the claims."); *Zenith Lab. v. Bristol–Myers Squibb*, 19 F.3d 1418, 1424 (Fed.Cir.) ("The essence of prosecution history estoppel is that a patentee should not be able to obtain, through litigation, coverage of subject matter relinquished during prosecution."), *cert. denied*, —— U.S. ——, 115 S.Ct. 500, 130 L.Ed.2d 409 (1994); *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951 (Fed.Cir.1993) (same); *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1577–78 (Fed.Cir.1993) (same). Nothing about the "insubstantial differences" test articulated in *Hilton Davis* indicates that prosecution history estoppel is no longer relevant; indeed, a prosecution history estoppel inquiry still appears to be the inseparable handmaiden of assertion of doctrine of equivalents infringement. *See Modine Mfg. Co.*, 75 F.3d at 1556 (still considering the extent of prosecution history estoppel under the *Hilton Davis* "insubstantial difference" test of equivalence); *Sofamor*, 74 F.3d at 1222 (same); *Pall Corp.*, 66 F.3d at 1218 (same). What the Federal Circuit Court of Appeals did do in *Hilton Davis* was clarify that when considering prosecution history estoppel, " 'a close examination must be made as to, not only what was surrendered, but also the reason for such a surrender,' " in order to determine that estoppel not be over extended to include merely insubstantial differences. *Hilton Davis*, 62 F.3d at 1525 (quoting *Insta–Foam Prods, Inc. v. Universal Foam*

*Sys., Inc.*, 906 F.2d 698, 703 (Fed.Cir.1990), and finding estoppel did not bar insubstantial differences below a certain pH level, when the prosecution history revealed that the critical distinction being drawn between the invention and prior art was concerning pH levels *above* a certain level, thus making any differences above that pH level substantial); *see also Modine Mfg. Co.*, 75 F.3d at 1556 (in light of the *Hilton Davis* "insubstantial difference" test of equivalence, the "available range of equivalency is limited ... by estoppel.... Within this boundary, however, the prosecution history and the prior art do not eliminate equivalents if substantial identity is shown."); *Sofamor*, 74 F.3d at 1222 ("In addition, prosecution history and prior art may limit Sofamor's assertion of a reasonable likelihood that differences between the '562 patented invention and the MOSS–MIAMI device are insubstantial.... For instance, the trial court properly noted that the '562 patent strove to distinguish itself from prior art with a 'separate locking screw [or external nut].' The MOSS–MIAMI device, including its external nut, may fall within the scope of prior art. Thus, these limitations on the doctrine of equivalents may also support the district court's ruling that Sofamor did not show a reasonable likelihood of infringement"; citations omitted); *Pall Corp.*, 66 F.3d at 1218–19 (finding that differences surrendered during prosecution of patent application were necessarily substantial).

█ Thus, even in light of *Hilton Davis*, the patentee may not offer an interpretation for the purposes of litigation that would alter the indisputable public record consisting of the claims, the specification, and the prosecution history. *Southwall Technologies*, 54 F.3d at 1578 (describing such a ploy by the patentee as treating the claims as a "nose of wax"); *Zenith Lab.*, 19 F.3d at 1421 ("Prosecution history serves as a limit on the scope of claims by excluding any interpretation of the claim language that would permit the patentee to assert a meaning for the claim that was disclaimed or disavowed during prosecution in order to obtain claim allowance."). "[T]he limits imposed by prosecution history estoppel can be, and frequently

are, broader than those imposed by the prior art." *Haynes Int'l,* 8 F.3d at 1579.

In the present case, Smithco has demonstrated to the extent necessary in these provisional proceedings that Rogers asserted in prosecution of the patent application before the PTO that a feature distinguishing his invention from the prior art embodied in BEMCO side-dump trailers was precisely a difference in degree of dumping pivot, his pivoting not more than ninety degrees, as stated in the final limitation of claim 1, and the BEMCO trailers pivoting more than ninety degrees, which Rogers asserted made them unsafe. Rogers' surrender of the scope of the claimed invention as extending to pivots greater than ninety degrees specifically to distinguish prior art renders substantial any difference in pivot exceeding ninety degrees. *Hilton Davis,* 62 F.3d at 1525 (what is surrendered and the reason it is surrender determine what is a substantial difference surrendered in the course of prosecution of a patent); *see also Sofamor,* 74 F.3d at 1222 (a patent claim distinguished from prior art on precisely the ground on which an alleged infringing device differed from the patented invention undermined likelihood of success on a doctrine of equivalents infringement claim and supported denial of the preliminary injunction). Therefore, at least on the provisional record before the court, Circle R is estopped from asserting a likelihood of success on any infringement claim based on the doctrine of equivalents.

Counsel for Circle R asserted that even if there was some kind of prosecution estoppel, surely the doctrine of equivalents would still reach a trailer that avoided the claim limitation by only a degree or two. Counsel cited no authority for such a proposition, and the court finds none. Such a conclusion, as the court indicated above, is contrary to, not supported by, the decision in *Hilton Davis.* Under *Hilton Davis,* even had such a difference been only "insubstantial" absent any prosecution history, the fact that the difference was the key distinction between the invention and prior art asserted in the prosecution history raises the difference to a level of greater substance. *Hilton Davis,* 62 F.3d at 1525; *see also Sofamor,* 74 F.3d at 1222.

Circle R eschewed any infringement claim based on any pivot exceeding ninety degrees, and the court will not, in these preliminary proceedings, extend the scope of the patent to recapture anything Circle R has relinquished.

The court concludes, at least for the purposes of Circle R's preliminary injunction motion, that Circle R has failed to show a reasonable likelihood of success on either a literal infringement claim, because the accused device does not embody every limitation of the patent exactly, or a "doctrine of equivalents" infringement claim, because Circle R has failed to prove that the accused device embodies an equivalent it has not eschewed of each claim limitation. *Sofamor,* 74 F.3d at 1221. Because Circle R has failed to show a likelihood of success on the merits of its infringement claims, either as to validity or infringement, it has failed to satisfy one of the two "central" factors in the preliminary injunction analysis for patent cases. *Sofamor,* 74 F.3d at 1219; *Reebok,* 32 F.3d at 1555–56. Likelihood of success on the merits in this case therefore weighs *against* granting Circle R's motion for a preliminary injunction.

### 2. *Irreparable harm*
#### a. *Availability of a presumption*

▮ The other "central" factor in the preliminary injunction analysis involves a showing of irreparable harm to the patentee if the injunction is not granted. *Sofamor,* 74 F.3d at 1219; *Reebok,* 32 F.3d at 1555–56. Circle R relies on another presumption, like the presumption of validity of its patent, asserting that it is entitled to a presumption of irreparable harm. The Federal Circuit Court of Appeals has repeatedly held that where the plaintiff patentee has demonstrated a likelihood of success on the merits, the patentee is also entitled to a presumption of irreparable harm. *See PPG Indus.,* 75 F.3d at 1566; *High Tech Med.,* 49 F.3d at 1556 ("Reasoning by analogy from decisions involving other forms of intellectual property, this court has held that a presumption of irreparable harm arises when a patentee makes a clear showing that a patent is valid and that it is infringed," citing *Roper Corp. v.*

*Litton Sys., Inc.*, 757 F.2d 1266, 1271–72 (Fed.Cir.1985)); *Reebok*, 32 F.3d at 1556 ("We recognize, of course, that a movant who clearly establishes the first factor receives the benefit of a presumption on the second."); *H.H. Robertson Co.*, 820 F.2d at 390; *Atlas Powder Co. v. Ireco Chem.*, 773 F.2d 1230, 1233 (Fed.Cir.1985). Thus, where there is "a strong showing" of likelihood of success on the merits, and that strong showing is "coupled with continuing infringement," a presumption is raised of irreparable harm to the patentee. *Reebok*, 32 F.3d at 1556.

However, where the court concludes that the patentee is unlikely to succeed on the merits of its infringement claim, the presumption of irreparable harm is inapplicable. *PPG Indus.*, 75 F.3d at 1566 (contrasting cases in which there was no likelihood of success on the merits, such that the presumption did not obtain, and the case before it, in which the presumption could be invoked, because the court concluded there was a sufficiently strong likelihood of success on the merits); *High Tech Med.*, 49 F.3d at 1556 ("The presumption is unavailable here, however, because, as we have discussed, the record does not support [the patentee's] claim that it is likely to succeed in proving that the [accused device] infringes claim 25 of the '001 patent."); *Intel Corp.*, 995 F.2d at 1570 (where a presumption of irreparable harm was based on a likelihood of success finding that was clearly erroneous, the presumption of irreparable harm was also clearly erroneous). Therefore, in *Sofamor*, the Federal Circuit Court of Appeals concluded that the patentee's reliance on a presumption of irreparable harm was insufficient alone in the circumstances of that case on this second "central" factor: "Because the [patentee] did not show a clear case of likelihood of success on the merits . . . its failure to proffer evidence of irreparable harm buttresses the trial court's denial of [the patentee's] motion" for a preliminary injunction. *Sofamor*, 74 F.3d at 1222–23; *High Tech Med.*, 49 F.3d at 1556 ("Aside from the presumption, the district court pointed to no evidence that would support a finding of irreparable injury, and we find none.").

To put it another way, the presumption of irreparable harm is "rebuttable," and "does not automatically override the evidence of record." *Reebok*, 32 F.3d at 1556. In fact, the Federal Circuit Court of Appeals has concluded that, like the presumption of validity, what the presumption of irreparable harm does, is "simply act[ ] . . . as a procedural device which shifts the ultimate burden onto the alleged infringer." *Reebok*, 32 F.3d at 1556 (citing *Roper Corp.*, 757 F.2d at 1272). Thus, a district court may not require the movant to show irreparable harm without first establishing whether the movant is entitled to a presumption of irreparable harm based on a strong likelihood of success on the merits. *Reebok*, 32 F.3d at 1557. However, when the non-movant bears its burden of showing the lack of irreparable harm sufficiently to overcome the presumption of irreparable harm, the court does not necessarily have to consider likelihood of success on the merits before disposing of a motion for a preliminary injunction on the basis of a lack of irreparable harm. *Id.* Thus, there is no irrebuttable presumption " 'that *every* patentee is *always* irreparably harmed by an alleged infringer's pretrial sales,' " because such a rule " 'would . . . disserve the patent system.' " *Reebok*, 32 F.3d at 1558 (quoting *Illinois Tool Works*, 906 F.2d at 683).

In this case, the court has determined not only that Circle R cannot make a "strong" showing of likelihood of success on the merits as to validity and infringement, but that the "likelihood of success" factor in this case weighs against granting a preliminary injunction. Thus, this case falls not within the presumption, but within the group of cases in which Circle R must present some other evidence of irreparable harm. *PPG Indus.*, 75 F.3d at 1566; *High Tech Med.*, 49 F.3d at 1556. The court finds no sufficient showing by Circle R on this factor without the presumption to rely on.

#### b. When the presumption is not available

When the patentee or the court must look beyond the presumption of irreparable harm, the Federal Circuit Court of Appeals has stated that "[a]lthough a patentee's failure to practice an invention does not necessarily

defeat the patentee's claim of irreparable harm, the lack of commercial activity by the patentee is a significant factor in the calculus." *High Tech Med.,* 49 F.3d at 1556. Factors that have figured in the "irreparable harm" inquiry include whether the patentee's reputation will be injured by the public mistaking inferior, infringing goods, for the patentee's product, *Reebok,* 32 F.3d at 1557–58 (recognizing that such a harm is often not fully compensated by money damages); whether the patentee or its licensees will be injured by competition from the alleged infringer; whether the patentee runs the risk of loss of sales or goodwill in the market; whether the alleged infringer's activities have or will preclude the patentee from licensing its patent or entering the market, *High Tech Med.,* 49 F.3d at 1556–57; *Reebok,* 32 F.3d at 1558; *Roper Corp.,* 757 F.2d at 1273; as well as whether the patentee needs an injunction to protect its right to refuse to exploit its invention commercially or to prevent others from doing so; and whether the patentee is willing to forego patent exclusivity by licensing its invention, which "suggests that any injury suffered by [the patentee] would be compensable in damages assessed as part of the final judgment in the case." *High Tech Med.,* 49 F.3d at 1557; *T.J. Smith & Nephew Ltd. v. Consolidated Med. Equip., Inc.,* 821 F.2d 646, 648 (Fed.Cir.1987) (licensing is "incompatible with the emphasis on the right to exclude that is the basis for the presumption [of irreparable harm] in a proper case"). Finally, delay in seeking a remedy is an important factor in the "irreparable harm" inquiry, and argues against the need for a preliminary injunction. *High Tech Med.,* 49 F.3d at 1557.

 Although the court considers whether the alleged infringer is costing the patentee sales, potential lost sales alone do not necessarily demonstrate irreparable harm, because every patentee denied a preliminary injunction loses the right to exclude an accused infringer from the market place pending trial, and the circumstances may demonstrate that there is in fact no irreparable harm to the patentee as the result of the alleged infringer's sales. *Reebok,* 32 F.3d at 1558. Furthermore, the court may consider whether the alleged infringer would be un-

able to respond in damages for any infringement later found at trial, even though " 'the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole.' " *High Tech Med.,* 49 F.3d at 1557 (quoting *Hybritech,* 849 F.2d at 1456–57); *Reebok,* 32 F.3d at 1557 (also citing *Hybritech* for the proposition that the nature or a patent weighs against finding monetary damages are adequate). The Federal Circuit Court of Appeals has made it clear that " 'there is no *presumption* that money damages will be inadequate in connection with a motion for an injunction pendente lite.' " *High Tech Med.,* 49 F.3d at 1557 (emphasis in the original; quoting *Nutrition 21,* 930 F.2d at 872). The availability of damages, the Federal Circuit Court of Appeals has held, is "particularly significant when . . . the patentee can point to no specific interest that needs protection through interim equitable relief." *High Tech Med.,* 49 F.3d at 1557 (citing *Illinois Tool Works, Inc. v. Grip–Pak, Inc.,* 906 F.2d 679, 683 (Fed.Cir.1990)).

 In this case, Circle R's assertion of irreparable harm is the potential sales of its side-dump trailer lost to Smithco. While it could be inferred that Smithco takes away approximately one trailer sale per week from Circle R, based on Smithco's current production, which purportedly falls short of its demand, the court does not find that the loss of such sales is the result of infringement by Smithco. Rather, the Smithco trailers are not infringing, on the evidence currently before the court, and therefore sales of those trailers are not irreparable harms an injunction in a patent case is meant to guard against. *Reebok,* 32 F.3d at 1558 (circumstances may demonstrate there is in fact no irreparable harm from accused infringer's sales). Rather, such sales are like those lost to other non-infringing competitors, which are a fact of the market place, not a fact of misconduct of the competitor. Where the patentee, here Circle R, cannot show the alleged infringer's activities have or will preclude the patentee from licensing its patent or entering the market, *High Tech Med.,* 49 F.3d at 1556–57; *Reebok,* 32 F.3d at 1558; *Roper Corp.,* 757 F.2d at 1273, because of the

limited likelihood of success on a claim of infringement, the barrier to the patentee's entry into the market, in this court's view, simply is not attributable to misconduct of the alleged infringer, but only to existing market resistance. Thus, Circle R can point to no specific interest that needs protection from Smithco through interim equitable relief. *High Tech Med.*, 49 F.3d at 1557.

 Furthermore, there is no showing that if Circle R should ultimately prevail on its infringement claims against Smithco that Smithco will not be able to respond in damages, and that Circle R will not be adequately compensated by such money damages. *Id.* Although Circle R argued that it will lose goodwill and repeat business if it loses sales to Smithco, and that economic damages models do not adequately consider such intangible losses, the court reiterates that " 'there is no *presumption* that money damages will be inadequate in connection with a motion for an injunction pendente lite.' " *High Tech Med.*, 49 F.3d at 1557 (emphasis in the original; quoting *Nutrition 21*, 930 F.2d at 872). Furthermore, because the court has concluded that this is a case in which the patentee can point to no specific interest that needs protection through interim equitable relief, it is a case in which damages after trial are a more appropriate alternative than a pre-trial injunction. *High Tech Med.*, 49 F.3d at 1557.

Thus, without the aid of the presumption of irreparable harm not available to it because of its limited showing of likelihood of success on the merits, Circle R cannot carry its burden on this second "central" factor in the preliminary injunction analysis. Circle R has therefore failed to carry its burden on either of the two "central" factors, which instead weigh *against* issuance of a preliminary injunction in this case.

### 3. *Balance of harms*

 Although its conclusions as to the first two factors in the preliminary injunction analysis probably make it unnecessary for the court to reach the remaining two factors, *see, e.g., Sofamor*, 74 F.3d at 1223; *High Tech Med.*, 49 F.3d at 1554–55; *Reebok*, 32 F.3d at 1556; *New England Braiding*, 970 F.2d at 882, the court will nonetheless do so.

In considering the third factor in the analysis, the balance of hardships, the court may properly consider whether the patentee would suffer significant harm from the denial of an injunction, while an injunction would be less burdensome for the defendant. *PPG Indus.*, 75 F.3d at 1566. This determination may be based in part on whether the injunction "would require only a temporary interruption in [the defendant's] production and sale" of the allegedly infringing product. *PPG Indus.*, 75 F.3d at 1566.

 In the present case, it is apparent that issuance of a preliminary injunction would not maintain the status quo, but would instead inflict very grave hardships on Smithco, and those hardships are not justified by Smithco's having built a business on the basis of an infringing product, while any hardships suffered by Circle R as the result of denial of a preliminary injunction are matters of market place dynamics, not Smithco's alleged infringement. *Cf. PPG Indus.*, 75 F.3d at 1566 (injunction was less burdensome on infringer, as it would require only a temporary interruption in the infringer's production and sale of only one of its products); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n. 12 (Fed.Cir.1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."). What Smithco would suffer would not be simply a partial or temporary shutdown of its business, by precluding it from producing and selling one of its products, but the complete shutdown of its business, which depends entirely on the accused product the record so far shows is not in fact infringing, until final determination of Circle R's claims can be made. *Id.* The court is unwilling to inflict such a complete shutdown of Smithco in light of Circle R's limited showing on likelihood of success on the merits and irreparable harm.

At the preliminary injunction hearing, Circle R attempted to establish that Smithco could simply make non-infringing trailers instead of infringing ones. To this, Mr. Smith stated, "That's what I'm doing now," and this court, having found but limited likelihood of

success on an infringement claim, tends to agree with him. However, just as persuasive is Mr. Smith's assertion that he wasn't sure a shift in production to trailers of a different design could be carried out quickly or economically. Certainly, even a change in the sole item produced by Smithco would involve significant down time in production, disruption to working schedules and pay of employees, additional costs, either of redesigning or retooling, as well as uncertainty about the marketability of the new product, versus the apparently assured sales of the current production line. Again, in light of the limited showing on likelihood of success on an infringement claim thus far made by Circle R, the court is unwilling to disregard these disruptions to Smithco's business.

Thus, this third factor, as have the preceding ones, weighs in favor of denial of Circle R's request for preliminary injunctive relief during the pendency of this action.

### 4. Public interest

■■■■■ Finally, the court turns to consideration of the "public interest." The public interest also involves a balancing, this time of whether an injunction would deprive the public of one supplier of a useful product, balanced against "the strong public policy favoring the enforcement of patent rights." *PPG Indus.*, 75 F.3d at 1566. Undeniably, an injunction would deny the public of one supplier, Smithco, of a useful product, a side-dump trailer apparently enjoying significant market demand, while there is little public policy interest favoring enforcement of patent rights when there is only a limited showing of the validity of the patent and its infringement. Thus, the public interest is either flat or favors the continued operation of Smithco during the pendency of this litigation.

### III. CONCLUSION

■■■■ The court concludes that presumptions alone are insufficient to carry the day for Circle R's motion for a preliminary injunction. To the contrary, Smithco has raised substantial questions as to the validity of both claims 1 and 2 of the '214 patent at issue here, owing to persuasive evidence of

an "on-sale" bar to the patent, which is sufficient to overcome the presumption of validity for preliminary injunction purposes. Smithco's showing therefore undercuts Circle R's likelihood of success on the merits of its claims as to validity of the patent in suit. Furthermore, the court concludes that Circle R has demonstrated little likelihood of success on claims of either literal or "doctrine of equivalents" infringement. The Smithco trailers, according to the evidence so far presented, do not infringe the final limitation of claim 1 of the patent, and hence cannot infringe claim 2, which is a dependent claim, because they do not employ a degree of pivot that is not greater than ninety degrees, but instead employ a slightly larger degree of pivot. Circle R cannot recapture this slight difference under the doctrine of equivalents, because it specifically eschewed expansion of the scope of its claim in prosecution of the patent by distinguishing prior art on the basis that the prior art employed a degree of pivot in excess of ninety degrees. Because it cannot rely on the presumption of irreparable harm that arises from a strong showing of likelihood of success, and further evidence of irreparable harm is insufficient, the court concludes that Circle R cannot satisfy the first two "central" factors of a preliminary injunction analysis in a patent case.

Nor, the court concludes, can Circle R satisfy the final two requirements, a balance of harms favoring Circle R and public interest favoring an injunction. While Circle R may suffer some loss of sales to competing trailers made by Smithco, that loss of sales is not the result of misconduct in the form of infringement by Smithco. On the other hand, Smithco would be required to cease operations entirely or disrupt those operations drastically if its production of its sole product, its side-dump trailer, were enjoined. The court is unwilling to inflict such harm on Smithco in light of Circle R's limited showing that Smithco's product infringes Circle R's patent. Finally, the court finds no public interest favoring an injunction in this case where there is no strong likelihood that a valid patent is being infringed.

Because all four factors in the analysis of whether a preliminary injunction should is-

sue in a patent case weigh against issuance of such an injunction, or are simply "flat," Circle R's motion for a preliminary injunction is hereby **denied.** Furthermore, because an adequate foundation for challenged photographic evidence was laid, and that photographic evidence is relevant, if entitled to but little weight, Circle R's further motion to strike evidentiary materials is also **denied.**

IT IS SO ORDERED.